# STATE OF MICHIGAN

# COURT OF APPEALS

---

LEO TONDREAU, Personal Representative of the
Estate of SANDRA PEETZ,

        Plaintiff-Appellant,

v

HENRY FORD MACOMB HOSPITAL, a/k/a
HENRY FORD MACOMB HOSPITAL-
CLINTON TOWNSHIP CAMPUS,

        Defendant,

and

SACHINDER S. HANS, M.D., P.C.,
SACHINDER S. HANS, M.D., LI ZHANG, M.D.,
and MACOMB ANESTHESIA, P.C.,

        Defendants-Appellees.

UNPUBLISHED
October 8, 2015

No. 321514
Macomb Circuit Court
LC No. 09-002913-NH

---

Before: GADOLA, P.J., and JANSEN and BECKERING, JJ.

JANSEN, J. (*concurring in part and dissenting in part*).

I concur with the majority in all respects except with regard to its conclusion that the trial court erred in granting defendants' motion for summary disposition on the issue of plaintiff's CT scan causal theory. I would affirm the trial court's order granting summary disposition in favor of defendants.

The majority concludes that the trial court erred in granting defendants' motion for summary disposition with regard to plaintiff's CT scan causal theory. However, the majority overlooks the fact that the expert testimony is speculative and fails to establish that Dr. Hans breached the standard of care or caused Sandra Peetz's death when he did not order a CT scan immediately after the second surgery. A plaintiff must establish the following in order to prevail in a medical malpractice action:

> (1) the appropriate standard of care governing the defendant's conduct at the time of the purported negligence, (2) that the defendant breached that standard of care, (3) that the plaintiff was injured, and (4) that the plaintiff's injuries were the

-1-

proximate result of the defendant's breach of the applicable standard of care.
[*Kalaj v Khan*, 295 Mich App 420, 429; 820 NW2d 223 (2012).]

Expert testimony is required to establish the standard of care, breach of the standard of care, and causation in a medical malpractice action. *Kalaj*, 295 Mich App at 429; *Teal v Prasad*, 283 Mich App 384, 394; 772 NW2d 57 (2009). MRE 702 provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"However, an 'expert opinion based upon only hypothetical situations is not enough to demonstrate a legitimate causal connection between a defect and injury.' " *Teal*, 283 Mich App at 394 (citation omitted). A plaintiff is required to " 'set forth specific facts that would support a reasonable inference of a logical sequence of cause and effect.' " *Id*. at 394-395 (citation omitted). The facts in evidence must support the expert's opinion. *Id*. at 395. The expert must have a medical basis for his opinion and relate it to the patient's symptoms. See *Wolford v Duncan*, 279 Mich App 631, 638-639; 760 NW2d 253 (2008). "[W]hile not dispositive, a lack of supporting literature is an important factor in determining the admissibility of expert witness testimony." *Edry v Adelman*, 486 Mich 634, 640; 786 NW2d 567 (2010).[1] Furthermore, " '[i]n an action alleging medical malpractice, the plaintiff cannot recover for loss of an opportunity to survive or an opportunity to achieve a better result unless the opportunity was greater than 50%.' " *Taylor v Kent Radiology, PC*, 286 Mich App 490, 502; 780 NW2d 900 (2009), quoting MCL 600.2912a(2).

The deposition testimony of Dr. Wayne Flye, the standard of care expert, is speculative and does not establish whether defendant Dr. Sachinder Hans breached the standard of care when he failed to order a CT scan immediately following Peetz's second surgery. Although Dr. Flye testified at one point during his deposition that Dr. Hans breached the standard of care when he did not obtain a CT scan immediately after the second surgery, Dr. Flye failed to explain what the standard of care is or why Dr. Hans's actions fell below the standard of care. He also failed to specify when Dr. Hans should have obtained the CT scan relative to the second surgery. Instead, Dr. Flye conceded during his deposition that he could not pinpoint a specific time during

---

[1] Although medical literature is not always necessary in determining the admissibility of expert testimony, the lack of supporting medical literature, combined with a lack of any other form of support, renders an expert opinion inadmissible. See *Edry*, 486 Mich at 641 ("While peer-reviewed, published literature is not always a necessary or sufficient method of meeting the requirements of MRE 702, in this case the lack of supporting literature, combined with the lack of any other form of support for [the expert's] opinion, renders his opinion unreliable and inadmissible under MRE 702.").

which Dr. Hans should have ordered a CT scan after the second surgery in order to reverse Peetz's condition. He testified during his deposition as follows:

> *Q*. Do you have an opinion as to what her status would have been if they had gotten the CT done, say, by 1600 or 1630?

> *A*. Well, I think that she has the swelling in the brain that can't be changed, but a large part of the compression and shifting is the subdural hematoma which can be decompressed with a burr hole and evacuation of clotting, and so if her symptoms – we know that subdural hematomas, that they can have profound deficit and you can evacuate the clot and it depends whether there's – and it's variable in terms of how much injury has occurred. Many of these will reverse completely, so the neurological symptoms reverse. Others will be left with some deficit. It's hard to tell.

> *Q*. My question is are you going to testify as to a specific time that her situation could have been reversed?

> *A*. It's hard to tell. Every minute counts and I can't really tell you.

> *Q*. Okay. So you're not – you don't know?

> *A*. I can't really tell you, no. I just know that everything is increasing minute by minute.

Therefore, Dr. Flye failed to establish the factual and medical basis for his opinion. See *Teal*, 283 Mich App at 394-395; *Wolford*, 279 Mich App at 638-639. Dr. Flye also did not refer to medical data or literature regarding the proper standard of care. See *Edry*, 486 Mich at 640.[2] Dr. Flye's equivocal and unsupported testimony was insufficient to establish whether Dr. Hans breached the standard of care. See *Teal*, 283 Mich App at 394-395; *Wolford*, 279 Mich App at 638-639. Furthermore, to the extent that Dr. Donald C. Austin, the causation expert, testified regarding the standard of care, Dr. Austin was unable to provide an opinion regarding the

---

[2] The majority asserts that the issue of admissibility of plaintiff's expert testimony regarding the CT scan causal theory under MRE 702 is not properly before this Court since the trial court granted defendant's motion for summary disposition on other grounds. However, the issue whether summary disposition was proper under MCR 2.116(C)(10) was raised, addressed, and decided in the trial court, and we review a motion for summary disposition de novo. See *West*, 469 Mich at 183. Furthermore, we may review an unpreserved issue for plain error affecting substantial rights when " 'the issue involves a question of law and the facts necessary for its resolution have been presented,' " which is the case here. *D'Alessandro Contracting Group, LLC v Wright*, 308 Mich App 71, 77; 862 NW2d 466 (2014) (citation omitted). See also *Mich Dep't of Transp v Haggerty Corridor Partners Ltd Partnership*, 473 Mich 124, 134; 700 NW2d 380 (2005) (noting that the issue whether a rule of evidence precludes admission of evidence is a question of law).

standard of care since he was deposed and qualified as a causation expert. Therefore, plaintiff failed to present sufficient evidence regarding the standard of care. See *Kalaj*, 295 Mich App at 429.

The deposition testimony regarding causation was also speculative and inconsistent. The majority characterizes the expert testimony as consistent with regard to when Dr. Hans should have ordered a CT scan. However, the experts provided conflicting opinions regarding when Dr. Hans should have ordered a CT scan. While Dr. Flye emphasized that Dr. Hans acted properly when he performed the second surgery in lieu of ordering a CT scan after the first surgery, Dr. Austin testified that Dr. Hans should have ordered a CT scan after the first surgery. The crux of Dr. Austin's deposition testimony was that Peetz was "primarily salvageable" after the first surgery and that Dr. Hans should have obtained a CT scan after the first surgery in order for Peetz to make a complete recovery. Although Dr. Austin agreed with Dr. Flye that Peetz would have survived if Dr. Hans obtained a CT scan immediately after the second surgery, Dr. Austin testified that Peetz suffered from neurological deficits when Dr. Hans did not order a CT scan after the first surgery. Thus, the experts gave conflicting opinions regarding when Dr. Hans should have ordered the CT scan in order for Peetz to have the best chance of survival, and the jury would have to speculate regarding which causal theory to believe. See *Skinner v Square D Co*, 445 Mich 153, 164; 516 NW2d 475 (1994) (explaining that the evidence presented by the plaintiff must give rise to reasonable inferences of causation, rather than mere speculation), overruled in part on other grounds by *Smith v Globe Life Ins Co*, 460 Mich 446, 455 n 2; 597 NW2d 28 (1999), superseded on other grounds by statute as stated in *McLiechey v Bristol West Ins Co*, 408 F Supp 2d 516 (WD Mich, 2006).

Furthermore, neither Dr. Austin nor Dr. Flye provided a medical basis for their conclusion that Peetz would have survived if Dr. Hans ordered a CT scan immediately after the second surgery. See *Teal*, 283 Mich App at 394-395; *Wolford*, 279 Mich App at 638-639. Neither physician supported his theory with medical data or literature. See *Edry*, 486 Mich at 640.[3] Dr. Flye also did not identify how the failure to obtain a CT scan immediately after the second surgery caused Peetz's death or when Dr. Hans should have ordered a CT scan to prevent Peetz's death. See *Teal*, 283 Mich App at 394-395. Instead, Dr. Flye indicated that it was too difficult to predict what the outcome would have been had Dr. Hans ordered a CT scan immediately after the second surgery and that mere minutes could have made a difference. He added that it was "hard to tell" when Peetz's condition could have been reversed. Thus, the jury must speculate regarding the cause of Peetz's death because of Dr. Flye's ambivalent testimony and the lack of supporting evidence for either expert's causation theory. See *Skinner*, 445 Mich at 164; *Kalaj*, 295 Mich App at 429.

---

[3] The expert witnesses were not required to produce medical literature specifically stating exactly when a brain is no longer salvageable or what outcome can be expected at any given time on a continuum of a delay in intervention. However, the lack of *any* reference to supporting literature, combined with a lack of any other support, indicates that the expert opinions are unreliable and renders them inadmissible. See *Edry*, 486 Mich at 641.

Finally, plaintiff failed to present expert testimony establishing that there was a 50% or greater chance of an opportunity to survive or achieve a better result had Dr. Hans ordered a CT scan immediately after the second surgery. See *Taylor*, 286 Mich App at 502. Dr. Flye testified regarding the chance of survival as follows:

> *Q*. Do you think she would have survived?
>
> *A*. Yes.
>
> *Q*. More likely than not?
>
> *A*. Well, it depends on when you do it. If you did it 20 minutes before the CT scan was reported, it's hard to say, but within a reasonable – you can get a CT scan from the operating room in 45 minutes. I would think that in that setting more than likely the patient would have been salvaged.

Contrary to the majority's assertion, Dr. Flye's testimony regarding the opportunity to survive or achieve a better result is equivocal. Dr. Flye merely stated that he "would think" that it was "more than likely" that Peetz would have been salvaged had Dr. Hans ordered a CT scan after the second surgery. Dr. Flye failed to unequivocally state that there was a greater than 50% chance that Peetz had an opportunity to survive or achieve a better result had a CT scan been performed immediately after the second surgery. See MCL 600.2912a(2). Dr. Flye also failed to support his conclusion with facts or provide a medical basis for his opinion. See *Teal*, 283 Mich App at 394-395; *Wolford*, 279 Mich App at 638-639. Thus, the jury must speculate regarding whether there was a 50% or greater chance of survival or a better result had a CT scan been obtained immediately after the second surgery. See *Skinner*, 445 Mich at 164; *Taylor*, 286 Mich App at 502.[4]

For the reasons discussed above, I conclude that the trial court did not err in granting summary disposition in favor of defendants. I would affirm.


/s/ Kathleen Jansen

---

[4] The focus of both depositions was whether the carotid endarterectomy caused the subdural hematoma that Peetz suffered. The Michigan Supreme Court determined that the expert opinions on the issue were inadmissible. See *Tondreau v Sachinder S Hans, MD, PC*, 495 Mich 860 (2013). The failure to order a CT scan immediately after the second surgery was discussed briefly during both depositions and was not fully developed, which likely explains why the testimony on the issue is speculative and unsupported.