# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* ESTATE OF RONALD KEVIN MOCHTY.

---

ELITE SHELLENBARGER, personal
representative of the ESTATE OF RONALD
KEVIN MOCHTY,

        Appellee,

v

BRITTNEY MOCHTY,

        Appellant.

UNPUBLISHED
October 9, 2018

No. 341855
Iosco Probate Court
LC No. 17-003503-DE

---

Before: BOONSTRA, P.J., and O'CONNELL and TUKEL, JJ.

PER CURIAM.

Appellant, Brittney Mochty ("Brittney"), appeals by right the trial court's order finding valid the will of her father, Ronald Mochty ("Mr. Mochty"), and determining his heirs to be Kaitlyn Mochty and Dylan Mochty. Brittney contends that the trial court should have notified the parties sooner of its personal acquaintance with Mr. Mochty, the trial court abused its discretion by not giving Brittney an adequate opportunity to obtain medical records about Mr. Mochty's medical condition at the time he made the will, and the trial court failed to hold accountable the temporary personal representative, Elite Shellenbarger, for failing to respond to Brittney's requests to authorize the release of Mr. Mochty's medical records. We discern no error requiring reversal in the trial court's handling of this matter, and we affirm.

## I. JUDICIAL IMPROPRIETY

Brittney argues that the trial court acted improperly by failing to disclose its acquaintance with Mr. Mochty sooner than it did when it rendered the decision under review, in violation of MCR 2.003 and Canon 2 of the Michigan Code of Judicial Conduct. A party requesting judicial disqualification must follow the procedural requirements in MCR 2.003 to preserve this claim. *Kloian v Schwartz*, 272 Mich App 232, 244; 725 NW2d 671 (2006). The party seeking disqualification must file a motion within 14 days of discovering the grounds for disqualification. MCR 2.003(D)(1)(a). A motion and affidavit must detail all grounds for disqualification. MCR 2.003(D)(2). In addition, if the challenged judge denies the motion for disqualification, the party

-1-

seeking disqualification should request review of the denial of the motion with the chief judge. MCR 2.003(D)(3)(a)(*i*). A late motion is properly denied as untimely. *In re MKK*, 286 Mich App 546, 566; 781 NW2d 132 (2009). Failure to submit the required affidavit or to seek de novo review by the chief judge results in waiver of the claim of disqualification. *Davis v Chatman*, 292 Mich App 603, 615; 808 NW2d 555 (2011); *Law Offices of Lawrence J Stockler, PC v Rose*, 174 Mich App 14, 23; 436 NW2d 70 (1989). Brittney filed a motion for disqualification 17 days after the potential basis for disqualification arose. The motion did not include an affidavit, and Brittney did not seek de novo review of the denial of her motion by the chief judge. Accordingly, Brittney waived the issue by failing to follow the proper procedure.

Moreover, reviewing this unpreserved issue for plain error affecting substantial rights, we conclude that Brittney has not demonstrated plain error. See *Wolford v Duncan*, 279 Mich App 631, 637; 760 NW2d 253 (2008). MCR 2.003(C) lists reasons warranting the disqualification of a judge, including the following:

> (b) The judge, based on objective and reasonable perceptions, has either (i) a serious risk of actual bias impacting the due process rights of a party as enunciated in *Caperton v Massey*, 556 US 868; 129 S Ct 2252; 173 L Ed 2d 1208 (2009), or (ii) has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct.

> (c) The judge has personal knowledge of disputed evidentiary facts concerning the proceeding. [MCR 2.003(C)(1)(b) and (c).]

Canon 2 directs judges to avoid the appearance of impropriety. Code of Judicial Conduct, Canon 2(A). Judges are presumed to be impartial. *In re MKK*, 286 Mich App at 566.

Brittney argues that the trial judge's failure to notify the parties sooner that he knew Mr. Mochty created an appearance of impropriety. The trial judge's acquaintance with Mr. Mochty was too casual to support this argument. The trial judge stated that he knew Mr. Mochty in 1999 and that he did not remember the time frame of their acquaintance. It is not clear how often the trial judge interacted with Mr. Mochty, particularly in 2008 when Mr. Mochty made the will. Therefore, Brittney's argument is unavailing.

Moreover, even if the trial judge had disclosed his social acquaintance with Mr. Mochty sooner, the trial judge's recusal would not have been necessary. This Court has rejected a motion for disqualification based on a trial court's viewing of evidence outside the proceeding when the trial court made it clear that it relied on evidence admitted at the proceeding. *Davis*, 292 Mich App at 614-615. Similarly, in this case, the trial judge clearly relied on admitted evidence to conclude that Mr. Mochty was of sound mind when he made the will. The trial judge relied on the testimony of Nichol Palumbo, the lawyer who prepared and notarized the will. She believed that Mr. Mochty was of sound mind when he made and signed the will. Palumbo also stated that Mr. Mochty knew the objects of his bounty and the nature of his assets. Palumbo further testified that Mr. Mochty was a savvy businessman who did what he wanted and took orders from no one. Brittney's only countervailing evidence was her testimony that Mr. Mochty was a longtime alcoholic and her belief that her siblings did not like her. Brittney offered no evidence to show that longtime alcoholism is correlated with a level of cognitive

impairment consistent with legal incapacity. She called no witnesses to testify that Mr. Mochty was incapable of thinking rationally and making a will. Brittney presented no evidence other than her unsupported opinion to argue that Mr. Mochty was legally incapacitated when he made the will. Additionally, Palumbo's testimony about Mr. Mochty's willfulness undermines Brittney's belief that her siblings unduly influenced her father. The trial judge relied on testimony that Mr. Mochty was capable of making a will in 2008. Therefore, the trial judge's disqualification was not warranted.

Finally, Brittney asserts that the trial judge's failure to disclose his acquaintance with Mr. Mochty sooner violated her right to due process, citing *Caperton*, 556 US 868. She provided no reasoning to support this assertion. Accordingly, we need not address this cursory argument. See *Meagher v Wayne State Univ*, 222 Mich App 700, 716; 565 NW2d 401 (1997). In any event, the extreme circumstances present in *Caperton*, 556 US at 884-890, are not present in this case. Therefore, Brittney's reliance on *Caperton* is unavailing. We reject Brittney's argument that the trial judge's handling of this case violated her right to due process.

## II. INADEQUATE DISCOVERY

Brittney argues that the trial court abused its discretion by not allowing adequate discovery, faulting the trial court for opposing counsel's failure to produce Mr. Mochty's medical records. Specifically, Brittney maintained that she saw Mr. Mochty's medical records in the house that were not produced in discovery. The trial court granted the single request for an extension of the discovery period that Brittney made. Although Brittney complained about the inadequacy of discovery at the final hearing, she did not ask the trial court for relief. Generally, we review a trial court's ruling on a discovery motion for an abuse of discretion. *Truel v City of Dearborn*, 291 Mich App 125, 131; 804 NW2d 744 (2010). Brittney did not file a discovery motion, such as a motion to compel, so we have no ruling to review. This issue is not preserved, and we review it for plain error affecting substantial rights. *Wolford*, 279 Mich App at 637.

We note that our review of this issue is made difficult by the near-complete absence of discovery documents in the record. Although the record contains reference to one deposition, interrogatories, explanations of benefits pertaining to Mr. Mochty's medical treatment, and a subpoena issued to a treating physician, the only discovery documents in the record are a notice of depositions and three accompanying subpoenas. Moreover, Brittney's only evidence to support this argument is her memory that she saw medical records in her father's home. Twenty-seven years old at the time of the hearing, Brittney moved away when she was 18. Brittney did not describe the medical records, where in the house she saw them, or when she was last in the house at all. In short, Brittney has not shown that the trial court was responsible for the opposing party's failure to produce the medical records Brittney expected.[1]

---

[1] Brittney cites the absence of any mention of Mr. Mochty's business interests in the will as evidence that he was not aware of the extent of his estate. Palumbo testified that Mr. Mochty was aware of the nature of his assets and that the business interests were disposed of as part of

## III. PERSONAL REPRESENTATIVE'S MALFEASANCE

Lastly, Brittney asserts that the trial court failed to hold the personal representative accountable for his failure to respond to Brittney's requests for authorization to obtain Mr. Mochty's medical records. Although Brittney complained about the personal representative's alleged failings to the trial court, she sought no relief.[2] Therefore, this issue is not preserved, and we review it for plain error affecting substantial rights. *Wolford*, 279 Mich App at 637.

Initially, when the trial court signed letters of authority for the personal representative, the trial court added a paragraph instructing the personal representative to authorize the release of Mr. Mochty's medical records to the parties' attorneys. The record contains a release form, signed by the personal representative and filed with the trial court, authorizing the release of Mr. Mochty's medical records around the time of his death. Although Mr. Mochty died eight years after he made the will, Brittney did not seek a correction of the relevant time period in the release form, nor did she ever mention this release form when complaining about the personal representative's inaction. In addition, Brittney did not ask the trial court for relief on this issue, so we will not now remand for the trial court to grant relief.[3]

In sum, Brittney raises several complaints about this probate proceeding. She did not seek relief, and she did not substantiate her unsupported assertions.

We affirm.

/s/ Mark T. Boonstra
/s/ Peter D. O'Connell
/s/ Jonathan Tukel

---

the residue of Mr. Mochty's estate. We do not see how the absence of a specific will provision for Mr. Mochty's business interests shows that he was legally incapable of making a will.

[2] Brittney maintains that an order to show cause should have been brought, but she did not bring one. We decline to remand for the trial court to order the personal representative to show cause.

[3] Brittney further alleges that farm equipment went missing under Shellenbarger's watch. Brittney introduced no evidence to support this claim, and she did not describe any of the items that went missing.