KIEFER V MARKLEY

Docket No. 280769. Submitted February 3, 2009, at Lansing. Decided April 28, 2009, at 9:00 a.m.

Marilyn J. and George Kiefer brought a medical malpractice action in the Washtenaw Circuit Court against John M. Markley, M.D., and Center for Plastic and Reconstructive Surgery, P.C., relating to hand surgery performed by Markley. The plaintiffs proposed Frederick A. Valauri, M.D., who devoted 30 to 40 percent of his professional time to hand surgeries, as their expert witness on standard of care. The court, Timothy P. Connors, J., granted the defendant's motion in limine precluding the admission of expert testimony from Valauri, ruling that under MCL 600.2169(1)(b), Valauri had to have devoted 50 percent of his professional time to the specialty of hand surgery in the year before the alleged malpractice in order to qualify as an expert witness on the standard of care applicable to Markley. The plaintiffs appealed.

The Court of Appeals *held*:

MCL 600.2169(1)(b) unambiguously provides that the expert must have spent the majority of his or her time the year preceding the alleged malpractice practicing or teaching the specialty the defendant physician was practicing at the time of the alleged malpractice. To the extent the word "majority" needs explanation, it means more than 50 percent.

Affirmed

O'CONNELL, J., dissenting, stated that the word "majority," as used in MCL 600.2169(1)(b), is ambiguous and should be interpreted to mean the largest percentage of a physician's practice, even if the physician spent less than half of his or her professional time on that specialty, to fulfill the legislative intent of ensuring that an expert witness has the appropriate qualifications and knowledge to testify regarding the appropriate standard of care.

*DeNardis, McCandless & Miller, P.C.* (by *Linda M. Galante* and *Ronald F. DeNardis*), for the plaintiffs.

*O'Connor, DeGrazia, Tamm & O'Connor, P.C.* (by *Julie McMann O'Connor*) for the defendants.

Before: WHITBECK, P.J., and O'CONNELL and OWENS, JJ.

OWENS, J. Plaintiffs appeal as of right the trial court's order granting defendants' motion in limine to strike plaintiffs' expert witness, Dr. Frederick A. Valauri, pursuant to MCL 600.2169(1)(b). We consider this case without oral argument, pursuant to MCR 7.214(E), and affirm.

Issues of statutory construction are reviewed de novo on appeal. *Wickens v Oakwood Healthcare Sys*, 465 Mich 53, 59; 631 NW2d 686 (2001); *Grossman v Brown*, 470 Mich 593, 598; 685 NW2d 198 (2004). However, a trial court's ruling regarding a proposed expert's qualifications to testify is reviewed for an abuse of discretion. *Woodard v Custer*, 476 Mich 545, 557; 719 NW2d 842 (2006); *Wolford v Duncan*, 279 Mich App 631, 637; 760 NW2d 253 (2008). An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes. *Woodard, supra* at 557, citing *Novi v Robert Adell Children's Funded Trust*, 473 Mich 242, 254; 701 NW2d 144 (2005). When interpreting a statute, the primary goal is to give effect to the Legislature's intent. *Brown v Detroit Mayor*, 478 Mich 589, 593; 734 NW2d 514 (2007); *Grossman, supra* at 598. The language of the statute must first be reviewed. Judicial construction is neither required nor permitted if the statute is unambiguous on its face. It is assumed the Legislature intended the words expressed if the statute is unambiguous. *Brown, supra* at 593; *Grossman, supra* at 598. Courts may consult dictionary definitions of terms that are not defined in a statute. *Woodard, supra* at 561; *People v Perkins*, 473 Mich 626, 639; 703 NW2d 448 (2005).

Plaintiffs argue that the trial court erred by finding that the language "devoted a majority of his or her professional time" in MCL 600.2169(1)(b) requires a physician to devote more than 50 percent of his or her professional time to the relevant specialty in order to be qualified to testify as an expert witness. Plaintiffs further argue that the 30 to 40 percent of Dr. Valauri's time that was devoted to hand surgery constituted the majority of his professional time spread among the three different areas in which he practiced (hand surgery, reconstructive surgery of the extremities, and cosmetic surgery) and as such should be sufficient to qualify him to testify for purposes of MCL 600.2169(1)(b). We disagree.

The only issue in this case is whether Dr. Valauri devoted a sufficient amount of time to hand surgery in his practice to qualify as an expert witness under MCL 600.2169, which provides in relevant part as follows:

(1) In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria:

(a) If the party against whom or on whose behalf the testimony is offered is a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty as the party against whom or on whose behalf the testimony is offered. However, if the party against whom or on whose behalf the testimony is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty.

(b) Subject to subdivision (c), during the year immediately preceding the date of the occurrence that is the basis for the claim or action, *devoted a majority of his or her professional time* to either or both of the following:

(*i*) The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, the active clinical practice of that specialty. [Emphasis added.]

The "specialty requirement is tied to the occurrence of the alleged malpractice and not unrelated specialties that a defendant physician may hold." *Tate v Detroit Receiving Hosp*, 249 Mich App 212, 218; 642 NW2d 346 (2002). In *Woodard*, the Court quoted the language of MCL 600.2169(1)(b), noting:

> Obviously, a specialist can only devote a *majority* of his professional time to *one* specialty. Therefore it is clear that § 2169(1) only requires the plaintiff's expert to match one of the defendant physician's specialties.
>
> * * *
>
> . . . As we explained above, one cannot devote a 'majority' of one's professional time to more than one specialty. [*Woodard, supra* at 560, 566 (emphasis in original).] [1]

The plaintiff's expert must have devoted a majority of his or her professional time during the year immediately preceding the date on which the alleged malpractice occurred to practicing or teaching the one most relevant specialty the defendant physician was practicing at the time of the alleged malpractice. *Id.* See also

---

[1] In his dissent, our esteemed colleague argues that the term "majority" should refer to "an amount that represents the largest percentage of the whole, even if this amount is less than 50 percent." Let us consider a situation where a doctor spends 40 percent of his time in one area, 40 percent in a second area, and 20 percent in a third. Under our colleague's definition, this hypothetical doctor would then be in the position of devoting the "majority" of his time to two different specialties. Because the *Woodard* Court maintained that this is impossible, it is clear that the *Woodard* Court relied on a definition of "majority" as "an amount that exceeds 50 percent of the total."

*Reeves v Carson City Hosp (On Remand)*, 274 Mich App 622, 630; 736 NW2d 284 (2007) (remanding to the trial court to determine whether the plaintiff's expert spent the *majority* of his time in the active clinical practice of emergency medicine, the instruction of students in the relevant specialty, or as the medical director of emergency services and board member, advisor, and consultant to various entities).

The language in § 2169(1)(b) is unambiguous, and judicial construction is neither required nor permitted. *Brown, supra; Grossman, supra.* The statute states that the expert must have spent the *majority* of his or her time the year preceding the alleged malpractice practicing or teaching the specialty the defendant physician was practicing at the time of the alleged malpractice. MCL 600.2169(1)(b). To the extent the word "majority" needs explanation, it is defined as, "the greater part or larger number; more than half of a total." *Webster's New World Dictionary*, 2d College Ed (1980). MCL 600.2169(1)(b), therefore, requires a proposed expert physician to spend greater than 50 percent of his or her professional time practicing the relevant specialty the year before the alleged malpractice. Dr. Valauri testified he spent only 30 to 40 percent[2] of his time in the practice of hand surgery, which, being a plurality rather than a majority of his time, is insufficient to qualify him as an expert for purposes of MCL 600.2169(1)(b).

Given the unambiguous language of the statute and the caselaw on this issue, this panel is constrained to affirm the trial court's decision. However, we note that

---

[2] Our colleague contends that Dr. Valauri spent 40 percent of his time in the practice of hand surgery. However, this was not his testimony. If he only spent 30 percent of his time practicing hand surgery, then even by the dissent's definition of "majority" he still would not have satisfied the requirements of MCL 600.2169(1)(b).

this is not a result we think the Legislature intended. Defendant Dr. John M. Markley was board-certified in plastic surgery with an added qualification in hand surgery, as was Dr. Valauri. We believe that this similarity, coupled with the fact that Dr. Valauri spent more than 50 percent of his time in the area of hand surgery and the closely related area of reconstructive surgery of other extremities, should qualify him as an expert in this situation. Nonetheless, we reluctantly hold that the trial court did not abuse its discretion by granting defendants' motion in limine to strike plaintiffs' expert witness. *Woodard, supra* at 557; *Wolford, supra* at 637.

We further note that although we believe that Dr. Valauri should qualify as an expert, we do not agree with the dissent's rationale. Using the definition of "majority" advocated by our colleague, an expert could engage in 11 different areas of practice, but because the expert spent 10 percent of his or her time in one area (greater than the amount of time spent in any other) he or she would qualify as an expert in that area. Although admittedly unlikely, this scenario demonstrates that defining "majority" as "an amount that represents the largest percentage of the whole, even if this amount is less than 50 percent," could result in expert opinions being rendered by underqualified individuals.

Affirmed.

WHITBECK, P.J., concurred.

O'CONNELL, J. (*dissenting*). The majority concludes that the words "devoted a majority of his or her professional time" in MCL 600.2169(1)(b) requires a physician to devote more than 50 percent of his professional time to the relevant subspecialty in order to be qualified to testify as an expert witness. I disagree.

Although the majority adopts one credible interpreta-
tion of an ambiguous statute, I believe the correct inter-
pretation of the phrase "devotes a majority of his or her
professional time" means just that; the doctor spends the
majority of his or her professional time as a board-certified
plastic surgeon who practices the trade. In this case, in
2003 Dr. Frederick A. Valauri spent all his professional
time working in his capacity as a board-certified plastic
surgeon, and he spent more time practicing in the subspe-
cialty of hand surgery than in any other subspecialty.[1]
This, in my opinion, is sufficient to qualify him to provide
expert testimony pursuant to MCL 600.2169(1)(b). In my
opinion, putting up impossible barriers and expecting
plaintiffs' experts to leap over those barriers was not the
intent behind the statute.[2]

In *Casco Twp v Secretary of State*, 261 Mich App 386,
390-391; 682 NW2d 546 (2004), this Court set forth the
standard for interpreting an ambiguous statute:

> The primary goal in statutory construction is to ascer-
> tain and give effect to the intent of the Legislature. When

---

[1] Dr. Valauri spends the rest of his time on reconstructive surgery of the
extremities and on cosmetic surgery.

[2] The purpose of MCL 600.2169 is to provide a guideline for the parties
and courts to follow to help ensure that an expert witness is properly
qualified by knowledge, skill, experience, training, or education to compe-
tently testify regarding the standard of care in the defendant doctor's area
of specialty or subspecialty. The members of this panel presumably agree
that Dr. Valauri meets the minimum qualifications under MRE 702 to testify
as an expert in this case. However, the majority believes that MCL 600.2169
blocks the admission of Dr. Valauri as an expert because Dr. Valauri did not
devote at least 50 percent of his practice to hand surgery.

Unfortunately, the majority's interpretation of this statute would
permit a doctor who does three surgeries a month, two of them being
hand surgeries, to testify as an expert in the area of hand surgery, but
would bar a doctor who does 50 surgeries each month from testifying if
only 24 of them are hand surgeries. Under such a scenario, the purpose
of the statute is undermined—some qualified doctors would be unable to
testify, while professional witnesses and other licensed physicians who
merely dabble in medicine would be qualified to testify.

a statute's language is clear and unambiguous, we must assume that the Legislature intended its plain meaning and enforce the statute as written. It is only when the statutory language is ambiguous that this Court is permitted to look beyond the statute to determine the Legislature's intent. Statutory language is considered ambiguous when reasonable minds can differ with respect to its meaning. When construing an ambiguous statute, "[t]he court must consider the object of the statute, the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the statute's purpose, but should also always use common sense." In this regard, courts should seek to avoid a construction that would produce absurd results, injustice, or prejudice to the public interest. [Citations omitted.]

I agree with the majority opinion that the only issue in this case is whether Dr. Valauri devoted a sufficient percentage of his practice to hand surgery to qualify as an expert witness.[3] MCL 600.2169 provides, in relevant part, as follows:

(1) In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria:

(a) If the party against whom or on whose behalf the testimony is offered is a specialist, specializes at the time of the occurrence that is the basis for the action in the same

---

[3] In his deposition, Dr. Valauri testified that he devoted the majority of his practice to hand surgery. He is a member of the American Society for the Surgery of Hand. He devotes between 30 and 40 percent of his practice to hand surgery. About one-third of his practice is reconstructive surgery of the extremities, and the remaining quarter or so is cosmetic surgery. Between 1987 and 1993, approximately 80 percent of his practice was hand and extremity surgery. I would conclude that a board-certified plastic surgeon with a subspecialty in hand surgery who spends between 60 and 80 percent of his time operating on extremities and hands would be qualified to testify as an expert in this case.

specialty as the party against whom or on whose behalf the testimony is offered. However, if the party against whom or on whose behalf the testimony is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty.

(b) Subject to subdivision (c), during the year immediately preceding the date of the occurrence that is the basis for the claim or action, *devoted a majority of his or her professional time to either or both of the following*:

(*i*) The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, the active clinical practice of that specialty.

The conceptual difficulty that bedevils the present case is attributable to the use of the term "majority" in the statute and the common understanding of the term "majority" among most people in our society. Years ago, this Court, referring to an opinion by the United States Supreme Court, stated:

> The phenomenon of identical words meaning different things, even in a single document, such as an insurance contract or statute, let alone in two separate documents, is neither unique to the case at bar nor to the elasticity and inherent limitations of the English language. *Nat'l Organization for Women, Inc v Scheidler*, 510 US 249, 258; 114 S Ct 798, 804-05; 127 L Ed 2d 99, 109 (1994) (recognizing that the statutory term "enterprise" in 18 USC 1962 [a] and [b] does not import an economic motive that is required in conjunction with the term "enterprise" in 1962[c] because "enterprise" was used in two different senses in the different subparagraphs). [*Cavalier Mfg Co v Employers Ins of Wausau*, 211 Mich App 330, 341; 535 NW2d 583 (1995).]

The fact that one word may have multiple meanings depending on its use only adds to the confusion. Such is the case with the term "majority." *Random House Webster's College Dictionary* (1997) defines the term

"majority" as follows: "1. the greater part or number; a number larger than half the total. 2. the amount by which the greater number surpasses the remainder (disting. from *plurality*)."[4] Depending on the context and the speaker, the term "majority" can have one of two conflicting meanings. A "majority" could refer to an amount that exceeds 50 percent of the total, as definition 1 indicates. Or, a "majority" could refer to an amount that represents the largest percentage of the whole, even if this amount is less than 50 percent, as definition 2 indicates.

Obviously, the different meanings associated with this term indicate that the proper meaning of the term "majority" often depends on the context in which it is used and, in the absence of contextual clues indicating which definition should be adopted, this term can create ambiguity. For example, what does the sentence "A majority of votes is needed to win" mean in the context of a three-way race for an elected office? Under the first definition of "majority," the winner must receive over half the votes cast. If a candidate receives only 45 percent of the vote, he or she does not win the election, even if the competitors have each received smaller percentages of the total votes cast. But under the second definition, the winner must simply receive the most votes of any candidate; therefore, the candidate with 45 percent of the vote has the majority of votes and wins the election, because he has more votes than either of his competitors.

The Legislature's use of the term "majority" in MCL 600.2169(1)(b) presents the same sort of ambiguity. MCL 600.2169(1)(b) states that a health professional called as an expert witness must have "devoted a

---

[4] *Random House Webster's College Dictionary* defines "plurality," in pertinent part, as "more than half of the whole; the majority."

majority of his or her professional time" in the preceding year to either the active clinical practice or the teaching of the same health profession or specialty in which the defendant physician is licensed. However, the statute fails to indicate whether an expert witness must spend over half his or her professional time on a particular specialty to be qualified as an expert witness, or whether the expert witness devotes a "majority of his or her professional time" on a particular specialty (and therefore is qualified to be an expert witness) if the expert witness simply devotes a larger percentage of his or her professional time on that specialty than on any other specialty.

In this case, this distinction determines whether Dr. Valauri is qualified to testify as an expert witness. Dr. Valauri devoted up to 40 percent of his practice to hand surgery in 2003, and he did not devote a larger percentage of his practice to any other specialty. Under the majority's interpretation of the statute, Dr. Valauri is not qualified to testify as an expert in this case because he did not devote at least 50 percent of his practice to hand surgery. But this interpretation assumes that the Legislature intended to define "majority" as "a number larger than half the total" when the statute does not make this intent clear. Instead, it is equally plausible that the Legislature intended for a "majority" to refer to the specialty that represented the largest percentage of a physician's practice, even if the physician spent less than half his or her professional time on that specialty. Under such an understanding of this term, Dr. Valauri would be qualified as an expert witness because he spent a majority of his time practicing the same specialty as the defendant, even though he did not devote over half his practice to the specialty.

Accordingly, I believe that the majority should have recognized that MCL 600.2169(1)(b) is ambiguous and

considered the Legislature's intent when interpreting the statute. After considering the object and intent of the statute, which is to ensure that an expert witness has the appropriate qualifications and knowledge to testify regarding the appropriate standard of care, I conclude that the Legislature did not intend for an expert witness to meet an arbitrary threshold in order to testify with regard to the standard of care, but intended that an expert witness is qualified to provide such testimony as long as the expert witness devoted the largest percentage of his or her practice to the same specialty as the defendant.[5] Such an interpretation ensures that the expert is familiar with the necessary standard of care without requiring a party to engage in the difficult, if not impossible, task of finding an expert whose practice paralleled that of the defendant.

I would reverse the decision of the trial court.

---

[5] The majority includes in its opinion a hypothetical case in which a doctor who spent 10 percent of his time practicing in one of his 11 areas of specialization would be permitted to testify as an expert if he did not devote a larger percentage of his time to the practice of any other specialty. Admittedly, under my understanding of the statute, this scenario could occur. However, the majority fails to recognize that the doctor in this hypothetical case *also* must pass the MRE 702 threshold to qualify as an expert witness. Under MRE 702, an individual must be "qualified as an expert by knowledge, skill, experience, training, or education" to testify as an expert. If the trial court does not find such a doctor sufficiently qualified to testify, it may not qualify the doctor as an expert. Consequently, a proper application of MRE 702 would prevent the situation described by the majority from occurring if this doctor were, in fact, unqualified to testify as an expert. See *Woodard v Custer*, 476 Mich 545, 572-574; 719 NW2d 842 (2006) (a proffered expert meeting the criteria contained in a subsection of MCL 600.2169 is still subject to scrutiny under MRE 702).