# STATE OF MICHIGAN

# COURT OF APPEALS

---

ROBERT LANGLEY,

        Plaintiff-Appellant,

v

CYNTHIA RUBERT, M.D.,

        Defendant-Appellee,

and

WEST BRANCH ORTHOPAEDICS STAFFING,
L.L.C., d/b/a WEST BRANCH
ORTHOPAEDICS,

        Defendant.

UNPUBLISHED
December 1, 2015

No. 322918
Ogemaw Circuit Court
LC No. 13-658856-NH

---

Before: JANSEN, P.J., and MURPHY and RIORDAN, JJ.

PER CURIAM.

In this medical malpractice action, plaintiff appeals as of right the trial court's order granting summary disposition in favor of defendant Cynthia Rubert, M.D.,[1] pursuant to MCR 2.116(C)(10) after the court determined that plaintiff's affidavit of merit did not suffice to support the complaint, because plaintiff's expert was not qualified to execute the affidavit. The trial court found that plaintiff's expert had not devoted, as required by MCL 600.2169, a majority of his professional time to the active clinical practice of defendant's specialty, orthopedic surgery, or to the instruction of students in that specialty, during the year immediately preceding the alleged malpractice. Because we conclude that plaintiff's expert was qualified under MCL 600.2169 to testify as a standard-of-care expert against defendant and was thus qualified to sign the affidavit of merit, MCL 600.2912d, the trial court erred in granting summary disposition for defendant. Accordingly, we reverse and remand for further proceedings.

---

[1] Defendant West Branch Orthopaedics Staffing, L.L.C., d/b/a West Branch Orthopaedics, was dismissed with prejudice pursuant to a stipulation by the parties. Our reference to defendant for the remainder of this opinion pertains to Dr. Rubert.

-1-

Plaintiff filed a complaint alleging that defendant, a board-certified orthopedic surgeon, had committed medical malpractice in relationship to a right shoulder hemiarthroplasty (shoulder replacement) performed by defendant on plaintiff in April 2011. MCL 600.2912d(1) requires a plaintiff bringing a medical malpractice action to file an accompanying affidavit of merit signed by a health professional who meets the requirements for an expert witness under MCL 600.2169. In an effort to comply with MCL 600.2912d and MCL 600.2169, plaintiff filed an affidavit of merit executed by Michael P. Rubinstein, M.D., who averred in the affidavit that he, like defendant, is board certified in orthopedic surgery. In Dr. Rubinstein's curriculum vitae, he indicated that not only is he a board-certified orthopedic surgeon, he also holds a Certification of Added Qualification (CAQ) in hand surgery. The American Board of Orthopaedic Surgery (ABOS) recognizes the specialty of, and provides for board certification in, orthopedic surgery, while also recognizing as subspecialties, and providing for board certification in, sports medicine and hand surgery. According to ABOS literature submitted by plaintiff, board certification in the specialty of orthopedic surgery covers surgery of "the spine, hands, feet, knee, hip, shoulder and elbow in children and adults." The ABOS literature further indicated that board certification in the subspecialty of hand surgery under a CAQ covers surgery in regard to "the hand, wrist and forearm." There is no dispute that, at the time of the alleged malpractice, Dr. Rubinstein was a board-certified orthopedic surgeon (specialty) and a board-certified hand surgeon (subspecialty), that defendant was a board-certified orthopedic surgeon (specialty), and that plaintiff's surgery concerned her right shoulder.

During his deposition, Dr. Rubinstein indicated that he does not operate as a general orthopedic surgeon. He elaborated:

> So in a way, I don't – I shouldn't say I don't operate as a general orthopedist, but I do see patients in the realm of general orthopedics. So if somebody came to me who I have operated on their shoulder, their hand or elbow and they have a back problem, I'll take care of them for that portion. And then if they needed surgery . . ., then I'll pass them off to the spine guy or the pain guy. So I do practice in the sense general office orthopedics, but I don't operate.

Dr. Rubinstein also testified that 99.9 percent of his medical practice pertains to hand and upper extremity surgery, "particularly . . . shoulder surgery." He further stated, "There were a number of opportunities where people wanted to take me on as just a hand surgeon, and I did not want to do that because my first real interest was the shoulder and shoulder elbow." Dr. Rubinstein testified at length about the shoulder-related surgeries that he performs, including a high number of rotator cuff arthroscopies (100 to 150 per year), along with shoulder arthroplasties (15 to 20 per year), shoulder instability surgeries (10 to 15 per year), and hemiarthroplasties (4 to 8 per year), which he performs after balancing factors such as age and activity level, often opting for less invasive alternatives. In an affidavit, separate and apart from the affidavit of merit, Dr. Rubinstein averred that "the majority of my practice involves the medical and surgical care of shoulder and elbow joints." He further averred that "[m]ore than 60% of my medical/surgical practice involves the care and treatment of shoulder and elbow joints; and more than 50% of my practice involves medical/surgical care of shoulder problems," which "percentages have remained essentially the same since 2009." Again, plaintiff's surgery was performed in April 2011. We note that ABOS does not recognize a subspecialty in nor provide board certification with respect to shoulder or shoulder-and-elbow surgery; those

particular types of surgeries simply fall under the specialty and board certification attendant to orthopedic surgery.

With those facts in mind, we now turn to MCL 600.2169, which provides, in relevant part, as follows:[2]

> (1) In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria:
>
> (a) If the party against whom . . . the testimony is offered is a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty as the party against whom . . . the testimony is offered. However, if the party against whom . . . the testimony is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty.
>
> (b) Subject to subdivision (c) [inapplicable], during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following:
>
> (*i*) The active clinical practice of the same health profession in which the party against whom . . . the testimony is offered is licensed and, if that party is a specialist, the active clinical practice of that specialty. [[3]]

Under MCL 600.2169(1)(a), "the plaintiff's expert witness must match . . . the specialty engaged in by the defendant physician during the course of the alleged malpractice, and, if the defendant physician is board certified in that specialty, the plaintiff's expert must also be board certified in that specialty." *Woodard v Custer*, 476 Mich 545, 560; 719 NW2d 842 (2006). "[A] 'specialty' is a particular branch of medicine or surgery in which one can potentially become board certified," and "if the defendant physician practices a particular branch of medicine or surgery in which one can potentially become board certified, the plaintiff's expert must practice .

---

[2] We review de novo a ruling on a motion for summary disposition, *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 424; 751 NW2d 8 (2008), as well as questions of statutory interpretation, but we review "a trial court's rulings concerning the qualifications of proposed expert witnesses to testify for an abuse of discretion," *Woodard v Custer*, 476 Mich 545, 557; 719 NW2d 842 (2006).

[3] Subsection (1)(b)(*ii*) of the statute concerns instructional time devoted to a specialty and is not pertinent to this case.

. . the same particular branch of medicine or surgery." *Id.* at 561-562.[4] Here, at the time of the occurrence, defendant was practicing the specialty of orthopedic surgery for which she was board certified, and Dr. Rubinstein matched that specialty and board certification. Accordingly, MCL 600.2169(1)(a) was satisfied, and we move on to MCL 600.2169(1)(b), which forms the point of contention.

"[I]n order to be qualified to testify under § 2169(1)(b), the plaintiff's expert witness must have devoted a majority of his professional time during the year immediately preceding the date on which the alleged malpractice occurred to practicing . . . the specialty that the defendant physician was practicing at the time of the alleged malpractice, i.e., the one most relevant specialty." *Woodard*, 476 Mich at 566. This Court further clarified the "majority" requirement under MCL 600.2169(1)(b) in *Kiefer v Markley*, 283 Mich App 555, 559; 769 NW2d 271 (2009):

> The statute states that the expert must have spent the *majority* of his or her time the year preceding the alleged malpractice practicing or teaching the specialty the defendant physician was practicing at the time of the alleged malpractice. MCL 600.2169(1)(b). To the extent the word "majority" needs explanation, it is defined as, "the greater part or larger number; more than half of a total." *Webster's New World Dictionary,* 2d College Ed. (1980). MCL 600.2169(1)(b), therefore, requires a proposed expert physician to spend greater than 50 percent of his or her professional time practicing the relevant specialty the year before the alleged malpractice.

Accordingly, in this case, Dr. Rubinstein must have devoted more than 50 percent of his professional time during the year immediately preceding plaintiff's shoulder surgery to the practice of orthopedic surgery.

In her motion for summary disposition, defendant maintained that Dr. Rubinstein "never devoted a majority of his professional time to the specialty of orthopedic surgery; rather, virtually all of his professional time ("99.9%") is spent as a hand and upper extremity surgeon." The trial court agreed and granted summary disposition in favor of defendant.

The error in the trial court's ruling and the flaw in defendant's argument is that the court and defendant conceptually grouped all of Dr. Rubinstein's work performing shoulder and shoulder-and-elbow surgeries under the doctor's subspecialty of and board certification in hand surgery, effectively and wrongfully treating "hand and upper extremity" surgery as a recognizable subspecialty under MCL 600.2169(1). While 99.9% percent of Dr. Rubinstein's

---

[4] The *Woodard* Court observed that the same principle is applicable to subspecialties, holding that "if a defendant physician specializes in a subspecialty, the plaintiff's expert witness must have specialized in the same subspecialty as the defendant physician at the time of the occurrence that is the basis for the action." *Woodard*, 476 Mich at 562. In this case, defendant was not practicing any subspecialty at the time of and relative to the alleged malpractice, only the specialty of orthopedic surgery.

active clinical practice was devoted to the hands and upper extremities, the doctor explained in his affidavit that more than 60% of this work was devoted to treating and performing surgeries relative to shoulder-and-elbow problems, with over 50% of his practice being devoted solely to treating and repairing shoulders. Less than 50% of his practice was devoted to treating and performing surgeries of the hand. Dr. Rubinstein's deposition also made clear that he focused on shoulder and shoulder-and-elbow surgeries.[5] As reflected above, board certification with respect to the subspecialty of hand surgery pertains to the hand, wrist, and forearm, not shoulders and elbows, which fall under the broader specialty and board certification of orthopedic surgery; there is no subspecialty or board certification specifically related to shoulder or shoulder-and-elbow surgery. And "hand and upper extremity" surgery is simply not a specialty or subspecialty, at least for purposes of MCL 600.2169, given that no board certification recognized by ABOS is available for that category or branch of surgery. See *Woodard,* 476 Mich at 561 ("a 'specialty' is a particular branch of medicine or surgery in which one *can potentially become board certified*") (emphasis added). Accordingly, defendant's references to and reliance on the *specialty* of "hand and upper extremity" surgery are entirely misplaced, undermining defendant's position.[6] This case required bifurcation of Dr. Rubinstein's work into two classifications: (1) hand surgeries; and (2) upper extremity or shoulder-related surgeries.

During the relevant timeframe, Dr. Rubinstein devoted a majority of his active clinical practice to the specialty of orthopedic surgery (defendant's specialty), which encompassed shoulder and shoulder-and-elbow surgeries, and not the subspecialty of hand surgery, which solely encompassed hand, wrist, and forearm surgeries. Dr. Rubinstein's indication in his deposition that he was not operating as a general orthopedic surgeon is taken out of context and unfairly characterized by defendant. It is abundantly clear that the doctor was merely observing that his practice did not entail performing a broad range of orthopedic surgeries, spanning the spine, hands, feet, knees, hips, shoulders, and elbows, but instead focused solely on the hands, shoulders, and elbows, and "*particularly* . . . shoulder surgery." (Emphasis added.)

Finally, we note that, under *Woodard* and the parameters set by ABOS, an expert meeting the criteria in MCL 600.2169(1) could have been satisfied in this case by a board-certified

---

[5] Contrary to defendant's argument on appeal, Dr. Rubinstein's affidavit did not contradict his deposition testimony. Rather, it was consistent with and clarified his deposition testimony.

We note that defendant does not contest the use or consideration of an affidavit in determining whether a physician is qualified to testify under MCL 600.2169(1)(b); she only asserts that consideration of Dr. Rubinstein's affidavit is improper because, in her view, it contradicts the doctor's deposition testimony.

[6] Defendant's stance is in line with CHIEF JUSTICE TAYLOR's concurring opinion in *Woodard*, joined by two other Justices, that rejected limitations being placed on what constitutes a "specialist" or "specialty" based on designations given by certifying medical organizations, instead directing the analysis to examining how a physician holds himself or herself out to the public with respect to expressed practice limitations and specialties. *Woodard*, 476 Mich at 604-609. The majority of our Supreme Court, however, rejected this approach.

orthopedic surgeon who never performed a shoulder surgery and instead focused his or her practice exclusively on, for example, hip surgery, which is not a recognized subspecialty nor subject to board certification by ABOS. We could better sympathize with defendant had this been the case. However, Dr. Rubinstein was devoting a majority of his professional time to the active clinical practice of treating problematic shoulders and performing shoulder-related surgeries, and defendant's alleged malpractice pertained to exactly that type of treatment and surgery, i.e., a right shoulder hemiarthroplasty. Dr. Rubinstein was thus the type of expert that the Legislature clearly envisioned as being qualified to testify under MCL 600.2169.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Having fully prevailed on appeal, plaintiff is awarded taxable costs under MCR 7.219.


/s/ Kathleen Jansen
/s/ William B. Murphy
/s/ Michael J. Riordan