# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF PATRICIA E. LEBLANC, by
SUZANNE RUBBA and DANIEL LEBLANC,
Personal Representatives,

        Plaintiff-Appellant,

v

EUGENE J. AGNONE, M.D., and MICHIGAN
CANCER SPECIALISTS, PLC,

        Defendants-Appellees,

and

CHAKRPANI RANGANATHAN, M.D.,
MICHAEL F. ROMANELLI, M.D., MACOMB
NEUROLOGY ASSOCIATES, PC, and WOODS
CARDIOVASCULAR INTERNAL MEDICINE
ASSOCIATES, PC,

        Defendants.

UNPUBLISHED
July 6, 2017

No. 330330
Macomb Circuit Court
LC No. 2013-002255-NH

ESTATE OF PATRICIA E. LEBLANC, by
SUZANNE RUBBA and DANIEL LEBLANC,
Personal Representatives,

        Plaintiff-Appellee,

v

EUGENE J. AGNONE, M.D., CHAKRPANI
RANGANATHAN, M.D., MICHIGAN CANCER
SPECIALISTS, PLC, and MACOMB
NEUROLOGY ASSOCIATES, PC,

        Defendants,

and

No. 330416
Macomb Circuit Court
LC No. 2013-002255-NH

-1-

MICHAEL F. ROMANELLI, M.D., and WOODS
CARDIOVASCULAR INTERNAL MEDICINE
ASSOCIATES, PC,

Defendants-Appellants.

Before: FORT HOOD, P.J., and CAVANAGH and RONAYNE KRAUSE, JJ.

RONAYNE KRAUSE, J. *(concurring in part and dissenting in part)*.

I respectfully dissent from the majority's conclusion that Dr. Gerald Sokol was appropriately disqualified from rendering an expert opinion of the standard of practice applicable to defendant Dr. Eugene Agnone. The purpose of MCL 600.2169 is to preclude expert testimony from an underqualified expert, not from an arguably overqualified expert. Furthermore, this case serves to demonstrate how the interpretation given to the statute is not only incompatible with its plain language, in that it treats "a majority" as synonymous with "the majority," but it is also incompatible with the reality of how medicine is practiced. In all other respects, I concur.

The instant issue turns on a single phrase used by our Supreme Court in discussing the implications of MCL 600.2169(1)(b), which, *inter alia*, requires a proposed expert doctor intending to render an opinion on a medical malpractice defendant's standard of care to have "devoted a majority of his or her professional time to" the active clinical practice of the same specialty the defendant was practicing relevant to the alleged malpractice. Our Supreme Court stated, without any discernable basis whatsoever, that "[o]bviously, a specialist can only devote a *majority* of his professional time to *one* specialty." *Woodard v Custer*, 476 Mich 545, 560; 719 NW2d 842 (2006) (emphasis in original). Dr. Sokal's testimony in this matter made it clear that no such conclusion is either obvious or warranted, even assuming that there is only one possible definition of "majority": he dedicated a considerable amount of his testimony to attempting to explain how his various specialties intertwine and overlap. Furthermore, as Judge O'CONNELL eloquently explained, in an opinion unfortunately disregarded by the majority on that panel, the blithe assumption that "majority" necessarily means "more than half" instead of "the largest percentage" seems to have passed unnoticed and has little bearing on reality. *Kiefer v Markley*, 283 Mich App 555, 560-566; 769 NW2d 271 (2009) (O'CONNELL, J., dissenting). I think it highly significant that the statute requires "*a* majority," strongly suggesting that "majority" refers to the largest percentage as Judge O'CONNELL opined; it does not specify "*the* majority," which is how *Woodard* nevertheless treated it.

I further conclude that our Supreme Court's statement that "a specialist can only devote a *majority* of his professional time to *one* specialty" was also obiter dicta and not binding. The proposed expert doctors discussed in *Woodard* simply did not share the relevant subspecializations with the defendant doctors. Consequently, neither the question of whether "a majority" can encompass multiple simultaneous overlapping specializations nor which possible

definition of "majority" should apply were properly before the Court, and they had no bearing on the Court's holding.[1] See *SBC Health Midwest, Inc v City of Kentwood*, ___ Mich ___, ___; 894 NW2d 535 (2017). Notwithstanding my conclusion that the statement in *Woodard* is mere dicta, I recognize that the *Kiefer* majority is binding on this panel pursuant to MCR 7.215(J)(1), and the majority in *Kiefer*, despite opining that the Legislature had actually intended a different result, a conclusion with which I agree, nevertheless held that "majority" necessarily meant "more than 50 percent." *Kiefer*, 283 Mich App at 557-560. Were I at liberty to do so, I would declare a conflict with *Kiefer* pursuant to MCR 7.215(J)(2). However, such is not necessary.

In any event, I believe the majority in this case and the trial court improperly relied on Dr. Sokal's reluctance to employ talismanic legal terms of art. It has long been established that courts look to the substance of matters, not superficial descriptors or labels given by any particular person. *Hurtford v Holmes*, 3 Mich 460, 463 (1855); *In re Traub Estate*, 354 Mich 263, 278-279; 92 NW2d 480 (1958); *Wilcox v Moore*, 354 Mich 499, 504; 93 NW2d 288 (1958); *Norris v Lincoln Park Police Officers*, 292 Mich App 574, 582; 808 NW2d 578 (2011). Indeed, parties are entitled to the benefit of the evidence even if they express an opinion to the contrary in open court. *Ortega v Lenderink*, 382 Mich 218, 222-223; 169 NW2d 470 (1969). See also *Zantop Int'l Airlines, Inc v Eastern Airlines*, 200 Mich App 344, 364; 503 NW2d 915 (1993) (noting that arguments of counsel are neither evidence nor stipulations of fact). The fact that Dr. Sokal refused to engage in what he clearly reasonably believed to be a legal absurdity[2] does not establish anything, especially where a review of his testimony as a whole *does* indicate that a majority, no matter how it is defined, of his professional time entailed the practice or teaching of medical oncology.

I agree with the majority to the extent that they describe Dr. Sokal's testimony regarding the percentage of time he spent in any particular kind of practice as "less clear or coherent" than might be hoped for under the circumstance. Nonetheless, that lack of clarity or coherence is obviously the result of a cultural clash between a formality and reality.[3] In practice, Dr. Sokal *was* able to quantify at least some portions of his time. He stated that he worked at least 20 hours a week exclusively in medical oncology at the Center for Drug Research, saw patients for "at least three hours a day in medical oncology," "[t]aking call 20 hours every month in medical oncology," 15 hours a week teaching and writing in a combination of medical oncology and clinical pharmacology, and that a majority of the time he billed for radiation oncology[4] was

---

[1] Indeed, I doubt they would have even been argued by the parties.

[2] Even from a bare written transcript, it is readily apparent that the doctor and the lawyers were all mutually frustrated with each others' perceived obstinance and incomprehension.

[3] Additionally, at one point counsel for defendant asked Dr. Sokal how much time he spent in "medical radiation oncology," which is of course a nonsensical contradiction in terms pursuant to defendant's own position in this matter.

[4] Dr. Sokal specifically pointed out, in response to questioning from defendant's counsel, that although he made more money from billing for radiation oncology, that did not mean he spent more time practicing radiation oncology.

actually performed "as a medical oncologist in evaluating it for that purpose." Although Dr. Sokal did not clearly articulate how many total hours a week he worked, I believe we are forced to presume that he does in fact sleep occasionally even in the absence of specific testimony to that effect. Even disregarding the teaching and writing, the remaining hours exceed half of a typical work-week for most people employed full-time.

I therefore conclude that the statement from *Woodard* dictating that "a majority" necessarily means that there can be only one majority is dicta, contrary to the plain language of the statute. This Court's decision in *Kiefer* was wrong in concluding that "a majority" as used in the statute meant more than half, and that conclusion should be challenged by convening a conflict panel at some point. Finally, I find adequate support in Dr. Sokal's testimony to find that he spent more than half of his time practicing medical oncology, thus even satisfying the *Woodard* requirement made binding on us by *Kiefer*. I would reverse the trial court to the extent it excluded Dr. Sokal as an expert witness for being overqualified. In all other respects, I concur with the majority.

/s/ Amy Ronayne Krause