# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF AURA ARGENTINA PEREZ, by
JENNY NASYELLY PEREZ, Personal
Representative, and RUBEN PEREZ,

UNPUBLISHED
December 4, 2018

Plaintiffs-Appellees/Cross-
Appellants,

v

No. 340082
Wayne Circuit Court
LC No. 15-014697-NH

HENRY FORD HEALTH SYSTEM,

Defendant-Appellant/Cross-
Appellee,

and

DANIEL MORRIS,M.D., DR. FRANK
MCGEORGE, DR. OLESYA
KRIVOSPITSKAYA, DR. TAREK TOUBIA, DR.
MICHELLE SLEZAK, DR. GREGORY HAYS,
DR. HEATHER EVANSON, DR. E. JENKINS
BROWN, DR. DENISE LEUNG, DR. LAURIE
ROLLAND, VIVEK RAI, M.D., DR. ANDREW
RUSSMAN, DR. SATHYAVANI RAMANUJAM,
and DR. ASHA SHAJAHAN,

Defendants.

Before:  SHAPIRO, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Defendant appeals by leave granted an order denying its motion to strike plaintiffs' expert witness, Dr. Chitra Venkatasubramanian, and for summary disposition under MCR 2.116(C)(10).  We reverse in part and affirm in part.  On cross-appeal, plaintiffs challenge an order denying their motion for leave to file a second amended witness list.  We reverse.

On November 13, 2010, plaintiff's decedent Aura Perez went to defendant's emergency room with complaints that included hand numbness, difficulty walking, headache, and shortness of breath.  She died on November 18, 2010.  In this medical malpractice action, plaintiffs

-1-

contend that Dr. Howard Feit, a board-certified general neurologist, failed to diagnose an acute peripheral or neuropathic disease process, likely botulism, which led to paralysis of breathing muscles, respiratory failure, and death. Plaintiffs' complaint was filed on November 11, 2015, with an affidavit of merit by Dr. Venkatasubramanian. On February 27, 2017, a stipulated order was entered naming the parties' expert witnesses and striking extraneous experts from their witness lists. On March 7, 2017, the deposition of Dr. Venkatasubramanian was taken.

On May 1, 2017, defendant filed a motion to strike plaintiffs' expert witness, Dr. Venkatasubramanian, under MCL 600.2169(1), and for summary disposition under MCR 2.116(C)(10). Defendant argued that Dr. Venkatasubramanian is not qualified to testify regarding whether general neurologist Dr. Feit met the standard of care. Relying on MCL 600.2169(1), defendant argued that Dr. Venkatasubramanian's testimony showed that she did not spend a majority of her professional time practicing in the area of general neurology. In particular, defendant noted that Dr. Venkatasubramanian testified that she is board certified in neurology, neurocritical care, and vascular neurology; neurocritical care and vascular neurology are subspecialty board certifications of neurology. Dr. Venkatasubramanian also testified that she is a clinical associate professor of neurology. In the relevant time period, November 2009 through November 2010, about 20-25% of her professional time was spent in education and research, while 75-80% of her time was spent in clinical practice. Of her clinical practice, 60-65% was spent as a "neurointensivist," with the rest of her time split between general neurology and vascular neurology.[1] As a neurointensivist, she saw patients in the emergency room and in the neurointensive care unit. More specifically, Dr. Venkatasubramanian testified:

*Q*.  . . . So 60 to 65 percent of your time was devoted to work as a neurointensivist, and we're talking 2009-2010; is that accurate?

*A*. So of my clinical time, 60 to 65 percent was as a neurointensivist. The rest of my clinical time was split between vascular neurology and general neurology.

*Q*. Okay, so 20 percent vascular neurology, 20 percent neurology; is that accurate?

*A*. Give or take.

Later in her deposition, Dr. Venkatasubramanian agreed with the description that "approximately 20 percent general, 20 percent vascular, and 60 percent of your work was devoted to neurointensivist work," and then she added, "I don't know where to throw clinic in there, but clinic also gets mixed in." Thus, defendant argued, because Dr. Feit is only board certified in general neurology, and his entire clinical practice is devoted to the treatment of general neurology patients, Dr. Venkatasubramanian, who devoted a majority of her professional practice to neurocritical care—and not general neurology—at the time of the alleged occurrence, is not qualified under MCL 600.2169(1) to provide standard of care testimony against Dr. Feit.

---

[1] It appears from the evidence that work as a "neurointensivist" relates to the board certification in neurocritical care.

Further, because she is not qualified to offer testimony against Dr. Feit, plaintiffs are unable to satisfy their burden of proof that he was professionally negligent and, thus, defendant was entitled to summary disposition under MCR 2.116(C)(10).

Plaintiffs responded to defendant's motion, arguing that the majority of Dr. Venkatasubramanian's time was spent practicing neurology even as a neurointensivist and she considered herself a neurologist first. That is, "the two titles 'general neurology' and 'neurocritical care' flow together." Further, her additional knowledge made her more qualified to offer opinion testimony, not less qualified. Thus, defendant's motion to strike plaintiffs' expert witness and for summary disposition should be denied.

Defendant replied to plaintiffs' response, arguing that general neurology is the relevant specialty in this case and plaintiffs' expert only devoted about 20% of her clinical practice to general neurology. Thus, she is not qualified under MCL 600.2169(1) to provide standard of care testimony in this case and defendant is entitled to summary disposition.

Plaintiffs then filed a supplemental response which consisted of an affidavit from Dr. Venkatasubramanian. In the affidavit, she averred that 100% of her professional time as an associate professor is spent teaching in the specialty of general neurology. "This teaching takes place primarily in a clinical setting, but also in a didactic setting." The affidavit is written in the present tense and does not refer to the 2009-2010 time period. She stated:

> Between my work on the general neurology floor, my continued treatment of patients in the ICU and Vascular Neurologic service for what includes their general neurologic needs and my teaching/academic work which is 100% devoted to general neurology, I am confident that I can accurately state under oath by way of this sworn affidavit, that well over 50% of my professional time involves practice in the field of general neurology.

Defendant filed a supplemental reply to plaintiffs' supplemental response, arguing that the affidavit was an attempt to create a genuine issue of fact in contrast to her harmful, but clear and unequivocal deposition testimony; thus, it may not be considered.

Following oral arguments on defendant's motion, the court ruled:

> The Court is going to deny the Motion to Strike. I do believe that, and I'll make this clear, that the Affidavit does come in. I know, you are objecting. You can appeal me on that one. I think that Mr. Sanfield [plaintiffs' counsel] is correct. I think that his [sic] just saying, "That's only the deposition testimony and nothing else" could be considered. I think, that is not – not only is not fair, I don't think that's the law. She did sign an Affidavit indicating that her practice is 100% in General Neurology. She teaches. This is her field. I don't – I don't see a problem with her. I think that she is qualified to testify as an expert.
>
> The Court will respectfully deny your motion.

On June 28, 2017, the court entered an order denying defendant's motion.

-3-

Defendant then moved for reconsideration. Defendant argued that even considering Dr. Venkatasubramanian's time spent teaching she only spent 45% of her professional time in the clinical practice and instruction of general neurology. More specifically, she testified that she devoted 20% of her professional practice to general neurology and that she devoted 20-25% of her professional time to teaching and research; thus, she was not qualified under MCL 600.2169(1) to provide standard of care testimony against Dr. Feit, a board-certified general neurologist.

Plaintiffs then filed a motion seeking relief from the previously entered stipulated order specifically naming the parties' expert witnesses, and for leave to file a second amended witness list. Plaintiffs argued that, although Dr. Venkatasubramanian was extremely qualified to give standard of care expert testimony in this case, to avoid further delay plaintiffs retained another expert in general neurology, Dr. Michael Gold. Thus, plaintiffs sought leave to file an amended witness list naming Dr. Gold as their expert in general neurology. Plaintiffs averred that adding this expert witness would not cause undue delay or alter the theories and issues in this case because the substance of Dr. Gold's testimony was to be similar to Dr. Venkatasubramanian's testimony, and thus, defendant would not be prejudiced by the amendment. Defendant opposed this motion to amend plaintiffs' witness list, arguing that the issue was moot since the court agreed that Dr. Venkatasubramanian was qualified to testify. Further, plaintiffs are bound by the stipulated order naming their expert witnesses and to permit the naming of a different witness, who was not on their witness list, would prejudice defendant and delay the proceedings.

On August 18, 2017, the court heard oral argument on plaintiffs' motion.[2] Plaintiffs argued that the parties had agreed to limit their experts in the interest of reducing costs and streamlining the issues but, after they agreed to do so, defendant filed a motion to strike plaintiffs' sole standard of care expert. And although the trial court denied the motion, defendant was seeking leave to appeal on the matter. In the interest of expediting this case so that it could be heard on its merits, plaintiffs sought leave to add a different standard of care expert to their witness list, Dr. Gold. Plaintiffs argued that trial was months away, Dr. Gold's opinions were substantially the same as Dr. Venkatasubramanian's, and that defendant could depose Dr. Gold without objection; thus, there was no prejudice to defendant. Defendant argued that plaintiffs entered into a stipulated order to limit their expert witness to Dr. Venkatasubramanian and they are bound by that order. The trial court denied plaintiffs' motion to amend their witness list, apparently relying on its prior ruling that Dr. Venkatasubramanian is qualified to testify as a standard of care expert in this case. On August 23, 2017, orders denying defendant's motion for reconsideration and denying plaintiffs' motion were entered by the trial court.

On September 11, 2017, defendant filed an application for leave to appeal the order denying its motion to strike plaintiffs' expert witness, Dr. Venkatasubramanian, and for summary disposition under MCR 2.116(C)(10), as well as a motion to stay pending appeal.

---

[2] Because the court had not ordered oral argument on defendant's motion for reconsideration, arguments were not made in its regard but the court denied the motion on the record.

-4-

On November 2, 2017, this Court entered an order granting defendant's application for leave to appeal, limited to the issues raised in the application and supporting brief, and granting the motion to stay pending appeal. *Estate of Aura Argentina Perez v Henry Ford Hosp*, unpublished order of the Court of Appeals, entered November 2, 2017 (Docket No. 340082).

On November 15, 2017, plaintiffs filed a claim of cross-appeal, challenging the trial court's order denying plaintiffs' motion to amend their witness list to add a different standard of care expert. On November 20, 2017, the trial court entered an order for stay of proceedings pending appeal.

On appeal, defendant first argues that the trial court erred in denying its motion to strike plaintiffs' expert witness, Dr. Venkatasubramanian, as unqualified under MCL 600.2169(1). We agree.

The interpretation of MCL 600.2169(1) is reviewed de novo. *Woodard v Custer*, 476 Mich 545, 557; 719 NW2d 842 (2006). The trial court's decision whether Dr. Venkatasubramanian is qualified to render an expert opinion under MCL 600.2169(1) is reviewed for an abuse of discretion. *Id*. "An abuse of discretion occurs when the decision results in an outcome falling outside the principled range of outcomes." *Id*. When a court's ruling is premised on an incorrect interpretation of the law, the ruling is necessarily an abuse of discretion. *Gay v Select Specialty Hosp*, 295 Mich App 284, 292; 813 NW2d 354 (2012).

MCL 600.2169(1) sets forth the criteria a proposed expert must satisfy in order to testify regarding the appropriate standard of practice or care, *Rock v Crocker*, 499 Mich 247, 260; 884 NW2d 227 (2016), and states in pertinent part:

> In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria:
>
> (a) If the party against whom or on whose behalf the testimony is offered is a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty as the party against whom or on whose behalf the testimony is offered. However, if the party against whom or on whose behalf the testimony is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty.
>
> (b) Subject to subdivision (c), during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following:
>
> (*i*) The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, the active clinical practice of that specialty.
>
> (*ii*) The instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered is

-5-

licensed and, if that party is a specialist, an accredited health professional school or accredited residency or clinical research program in the same specialty.

In *Woodard*, the Court explained that a "specialty" is "a particular branch of medicine or surgery in which one can potentially become board certified." *Woodard*, 476 Mich at 561. A "subspecialty" is "a particular branch of medicine or surgery in which one can potentially become board certified that falls under a specialty or within the hierarchy of that specialty." *Id.* at 562. A subspecialty is itself a "specialty" within the meaning of the statute. *Id.*

In this case, there is no dispute that Dr. Feit is a board-certified neurologist who was practicing as a general neurologist at the time of the alleged malpractice. At issue here is whether Dr. Venkatasubramanian meets the qualifications set forth under § 2169(1)(b). While she is board certified in neurology, she was also board certified in neurocritical care and vascular neurology which are subspecialty board certifications of neurology. As our Supreme Court explained in *Woodard*:

> [I]n order to be qualified to testify under § 2169(1)(b), the plaintiff's expert witness must have devoted a majority of his professional time during the year immediately preceding the date on which the alleged malpractice occurred to practicing or teaching the specialty that the defendant physician was practicing at the time of the alleged malpractice, i.e., the one most relevant specialty. [*Woodard*, 476 Mich at 566 (footnote omitted).]

In *Kiefer v Markley*, 283 Mich App 555, 559; 769 NW2d 271 (2009), this Court clarified that the word "majority" in the statute means that a proposed expert physician must have spent "greater than 50 percent of his or her professional time practicing the relevant specialty the year before the alleged malpractice."

In this case, because the specialty Dr. Feit was practicing at the time of the alleged malpractice was general neurology, a proposed standard of care expert testifying against Dr. Feit must have spent greater than 50% of her time practicing or instructing students in general neurology the year before the alleged malpractice. Dr. Venkatasubramanian testified in her deposition that during the relevant time, she spent about 75-80% of her professional time in clinical practice, and 20-25% in research and education. With regard to her clinical practice, she spent 60-65% of her professional time practicing as a neurointensivist, about 20% of her time practicing general neurology, and 20% of her time practicing vascular neurology. Clearly, then, Dr. Venkatasubramanian did not spend a majority of her professional time *practicing* general neurology during the relevant time.

In *Hamilton v Kuligowski*, the companion case to *Woodard*, our Supreme Court was faced with a similar factual scenario as presents in this case, i.e., a plaintiff's proposed expert witness who devoted a majority of time to a subspecialty rather than the general specialty at issue. *Id.* at 556. In that case, the defendant physician was board certified in general internal medicine, specialized in general internal medicine, and was practicing general internal medicine at the time of the alleged malpractice. *Woodard*, 476 Mich at 556, 577-578. The plaintiff's proposed expert was also board certified in general internal medicine; however, he spent the

majority of his professional time treating infectious diseases, a subspecialty of internal medicine. *Id*. at 556, 578. Our Supreme Court concluded that because the plaintiff's expert devoted a majority of his professional time to treating infectious diseases, the subspecialty, and not general internal medicine, he did "not satisfy the same practice/instruction requirement of § 2169(1)(b)." *Woodard*, 476 Mich at 578. Similarly, in this case, Dr. Venkatasubramanian was not qualified under § 2169(1)(b) because she did not spend the majority of her time practicing general neurology.

In a supplemental response to defendant's motion, plaintiff filed an affidavit from Dr. Venkatasubramanian which attempted to clarify her deposition testimony. Although defendant argued that the trial court was not permitted to consider this affidavit because it was an attempt to essentially rehabilitate damaging testimony, the trial court correctly rejected this argument. The affidavit did not contradict the deposition testimony as much as it clarified a point that was not explored—the subject area of Dr. Venkatasubramanian's research and teaching. But even considering the affidavit, the conclusion remains the same—she did not spend a majority of her professional time during the year immediately preceding the alleged malpractice practicing or teaching general neurology. According to her affidavit, 100% of her teaching/academic work was devoted to general neurology. But, again, she testified that only 20-25% of her professional time was devoted to teaching/academic work. The other 75-80% of her time was devoted to clinical practice, but only 20% of her clinical practice was devoted to general neurology which, combined, still amounts to less than a majority of her time, i.e., less than 50 percent (20% of 80% = .2 x .80 = .16 or 16% plus teaching/academics at most 25% = 41%).

In summary, Dr. Venkatasubramanian did not meet the requirements set forth under MCL 600.2169(1) because she did not spend a majority of her professional time practicing or instructing students in general neurology; thus, she was not qualified to render standard of practice or care testimony against Dr. Feit. Accordingly, the trial court abused its discretion in concluding that she was qualified to render such testimony and erred when it denied defendant's motion to strike this expert witness.

Next, defendant argues that, because plaintiff does not have an expert qualified under MCL 600.2169(1) to testify to the standard of care, defendant is entitled to summary disposition under MCR 2.116(C)(10). The trial court denied defendant's motion for summary disposition after concluding that Dr. Venkatasubramanian was a qualified expert witness. Generally, a decision on a motion for summary disposition is reviewed de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

There are two issues relevant to defendant's argument: plaintiffs' cross-appeal and the stipulated order entered on February 27, 2017 naming the parties' expert witnesses. We first address these matters.

Plaintiffs argue on cross-appeal that if Dr. Venkatasubramanian is determined to be unqualified, they should be allowed to amend their witness list to add a substitute expert witness, Dr. Michael Gold. In fact, the only reason the trial court denied their motion to amend their witness list was because the court also believed Dr. Venkatasubramanian to be a qualified expert in this case. A trial court's decision on a motion to amend a witness list is reviewed for an abuse of discretion. *Tisbury v Armstrong*, 194 Mich App 19, 20; 486 NW2d 51 (1991). We agree that

plaintiffs' motion for leave to file an amended witness list to add Dr. Gold as a standard of care expert should have been granted.

MCR 2.401(I)(1) mandates that parties file and serve witness lists in the time directed by the trial court's scheduling order. And if a witness is not listed in such a witness list, the court may prohibit that witness from testifying at trial except upon good cause shown. MCR 2.401(I)(2). However, before such a sanction is imposed—which may be equivalent to a dismissal—the trial court should consider a number of relevant factors, including but not limited to: "(1) whether the violation was wilful or accidental; (2) the party's history of refusing to comply with discovery requests (or refusal to disclose witnesses); (3) the prejudice to the defendant; (4) actual notice to the defendant of the witness and the length of time prior to trial that the defendant received such actual notice; (5) whether there exists a history of plaintiff's engaging in deliberate delay; (6) the degree of compliance by the plaintiff with other provisions of the court's order; (7) an attempt by the plaintiff to timely cure the defect[;] and (8) whether a lesser sanction would better serve the interests of justice." *Dean v Tucker*, 182 Mich App 27, 32-33; 451 NW2d 571 (1990) (footnotes omitted); see also *Duray Dev, LLC v Perrin*, 288 Mich App 143, 165; 792 NW2d 749 (2010). Further, the trial court should be mindful that the policy of this state favors the meritorious determination of issues. *Tisbury*, 194 Mich App at 21.

In this case, plaintiffs moved for leave to file a second amended witness list after defendant's motion to strike plaintiffs' expert was denied by the trial court. Plaintiffs offered that, to avoid further delay, they retained another expert in general neurology, Dr. Gold, who they would call as an expert in the place of Dr. Venkatasubramanian. Plaintiffs averred that the substance of Dr. Gold's testimony was the same or similar to Dr. Venkatasubramanian's testimony, and thus, would not alter the theories or issues in this case and would not cause undue delay or prejudice. However, the trial court denied the motion because it deemed the substitution unnecessary—Dr. Venkatasubramanian was sufficiently qualified to testify. There was no evidence that plaintiffs' negligently or wilfully retained an unqualified expert witness and, in fact, even the trial court believed the witness was qualified. See *Dean*, 182 Mich App at 32. Further, because of defendant's challenge, plaintiffs almost immediately retained another expert witness who they identified by name and offered for deposition. Defendant did not argue that plaintiffs had a history of discovery violations or engaged in deliberate delay. Defendant did claim that it would be prejudiced because discovery was closed and trial was scheduled for a few months later. However, the delay that resulted from the pursuit of this appeal was far greater than would have been occasioned by an amendment to plaintiffs' witness list and the taking of Dr. Gold's deposition. Further, any prejudice to defendant would be minimal considering that, as argued by plaintiffs, Dr. Gold shared the same or similar opinions as Dr. Venkatasubramanian. Moreover, review of the lower court record shows that this case had been timely litigated up through the time that plaintiffs sought leave to amend their witness list. And the consequence of striking plaintiffs' sole standard of care expert is that this case will be dismissed rather than decided on its merits, contrary to this state's policy. See *Tisbury*, 194 Mich App at 21.

Defendant argues, however, that the parties had stipulated to a reciprocal order limiting their experts and striking extraneous experts from their witness lists; thus, the trial court was prevented from granting plaintiffs' motion for leave to file an amended witness list. It is true that stipulated orders that are entered by the trial court are generally construed under the same rules that apply to contracts, as an agreement reached by and between the parties. See *Eaton Co Bd of*

*Co Rd Comm'rs v Schultz*, 205 Mich App 371, 378-379; 521 NW2d 847 (1994). And in contract interpretation, the goal is to determine and then enforce the intent of the parties based on the plain language of the contract. *St Clair Med, PC v Borgiel*, 270 Mich App 260, 264; 715 NW2d 914 (2006). That is, the plain and unambiguous contract language must be enforced as written unless the contract is contrary to law or public policy. *Rory v Continental Ins Co*, 473 Mich 457, 468-470; 703 NW2d 23 (2005).

The provision of the stipulated order at issue provides: "IT IS HEREBY STIPULATED, by and between counsel for the parties hereto, that Plaintiffs shall only utilize, at the time of trial, independent experts Dr. Chitra Venkatasubramanian (neurology), Dr. Daniel Spitz (forensic pathology), and Dr. Michael Thomson (economics)[.]" According the words their ordinary and plain meaning as we must, in relevant part, this provision states that the parties agreed that Dr. Venkatasubramanian was plaintiffs' neurology expert who would testify at trial. The only way to "utilize" an expert witness "at the time of trial" is through the provision of testimony. But contrary to the parties' agreement, this doctor may not testify at trial because she is not qualified as an expert witness. Because the parties' contract in this regard is contrary to the law, it will not be enforced. See *id*. at 470. Further, this stipulated order in no way impaired the trial court's discretion regarding plaintiffs' motion for leave to file a second amended witness list.

We conclude that, under all of the circumstances of this case, the trial court should have found that good cause existed to support plaintiffs' motion for leave to file a second amended witness list to add Dr. Gold as an expert witness in general neurology. Therefore, the trial court abused its discretion by denying plaintiffs' motion. In light of this holding, we also conclude that the trial court properly denied defendant's motion for summary disposition under MCR 2.116(C)(10), premised on the claim that plaintiffs had no expert qualified to testify to the standard of care. At minimum, defendant's motion is premature in light of our holding.

In summary, the trial court's order denying defendant's motion to strike plaintiffs' expert witness Dr. Venkatasubramanian is reversed, but we affirm the denial of defendant's motion for summary disposition. We also reverse the trial court's order denying plaintiffs' motion for leave to file a second amended witness list.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly